Lynval REYNOLDS, M.D. and
Ann Marie Reynolds,
M.D., Appellants

v.

The TRAVELERS INDEMNITY
COMPANY OF AMERICA,
Appellee.

No. 2005–CA–002246–MR.

Court of Appeals of Kentucky.

Aug. 17, 2007.

Joseph H. Mattingly III, Lebanon, KY, for appellants.

Richard P. Schiller, Katherine S. Zimmerer, Louisville, KY, for appellee.

Before COMBS, Chief Judge; MOORE and NICKELL, Judges.

## OPINION

COMBS, Chief Judge.

Lynval Reynolds and Anne Marie Reynolds appeal a summary judgment entered in favor of Travelers Indemnity Company of America (Travelers) by the Marion Circuit Court. The Reynoldses contend that the court erred by applying various provisions of their homeowner's insurance policy excluding coverage for substantial losses incurred at their home. Having carefully reviewed the pertinent policy provisions and the entirety of the record, we agree. Consequently, we reverse the judgment in favor of Travelers and remand for entry of judgment in favor of the Reynoldses.

Testimony elicited by deposition established the following pertinent facts. In November 1994, the Reynoldses purchased a house at 5519 Timber Ridge Drive in Prospect, Kentucky. Anne Marie, a physician, works in Louisville. Her husband, also a physician, has a medical practice in Marion County. As a convenience, the Reynoldses maintain a second home in Lebanon (Marion County).

In the fall of 2002, the Reynoldses attempted to correct a drainage problem at the Timber Ridge Drive property. The project required excavation around the perimeter of the house requiring the driveway and walkways to be separated from the house for several months. The work did not go well. After it was well underway, the Reynoldses decided that they would prefer to purchase a new house rather than to endure the inconvenience posed by the ongoing excavation at Timber Ridge Drive. They decided either to rent or to sell the Prospect residence upon completion of the drainage project. They bought a house at 2406 Greten Lane and moved out of the Timber Ridge Drive home on February 14, 2003.

After they moved, the Reynoldses continued to maintain the Timber Ridge Drive house. The household appliances remained in place, the utilities remained operational, and a lawn service was retained to tend to weekly and seasonal yard duties. The Reynoldses visited the property on a weekly basis to inspect its interior and exterior.

In August 2003, the Reynoldses traveled to Maine for a week's vacation. On August 24, 2003, during the week following their return from vacation, Anne Marie visited the Timber Ridge Drive property to check on the progress of the drainage project and the overall condition of the residence. When she entered the house, Anne Marie discovered that all of the appliances had been stolen and that the water line leading to the refrigerator's icemaker had been severed. As a result, the entire kitchen floor had been flooded with

water. The water had leaked through the hardwood flooring in the kitchen and onto the ceiling in the basement beneath, causing it to collapse. Additionally, the water flow had damaged the basement walls and the basement flooring. The Reynoldses later learned that the thief was one of the employees or subcontractors hired by the construction company conducting the excavation at the property. The damage to the interior of the Timber Ridge Drive home totaled more than $86,000.00; more than $25,000 of that amount was required for the removal of mold.

The Reynoldses submitted a claim to Travelers under their homeowner's insurance policy. Based upon various exceptions to coverage contained in the policy, Travelers denied the claim. On November 26, 2003, the Reynoldses filed an action for declaration of rights in Marion Circuit Court.

Following a period of discovery, the parties filed cross-motions for summary judgment. The motions, responses, and replies were supported by lengthy memoranda. Travelers argued that any one of several of the policy's exceptions to coverage applied to justify its denial of the Reynoldses' claim. The Reynoldses disputed that contention, arguing that more of the exceptions applied. They demanded judgment in their favor. On October 7, 2005, without any elaboration, the Marion Circuit Court granted summary judgment to Travelers. This appeal followed.

In reviewing a summary judgment, we must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03. The construction and interpretation of an insurance contract are questions of law for the court. *Kemper National Insurance Companies v. Heaven Hill Distilleries,*

*Inc.,* 82 S.W.3d 869 (Ky.2002). Consequently, we undertake our review *de novo. K.M.R. v. Foremost Insurance Group,* 171 S.W.3d 751 (Ky.App.2005).

On appeal, the Reynoldses argue that the trial court erred by concluding that the coverage exception for losses caused by vandalism and malicious mischief applied to exclude their claim; that the exception for losses caused by continuous or repeated seepage or leakage of water also applied to deny their claim; or that the exception for loss caused by mold applied to justify rejection of their claim. We agree that none of the policy exceptions applies under the facts and circumstances of this case. We shall address each of them.

The pertinent portions of the Reynoldses' homeowner's policy provide as follows:

We insure against risks of direct physical loss to property described in **COVERAGE A** [dwelling] and **B** [other structures], **EXCEPT:**

\* \* \* \* \*

C. WE DO NOT COVER:

1. LOSSES EXCLUDED UNDER **SECTION 1—EXCLUSIONS.**

\* \* \* \* \*

4. LOSS CAUSED BY THEFT IN OR TO A DWELLING UNDER CONSTRUCTION, OR OF MATERIALS AND SUPPLIES FOR USE IN THE CONSTRUCTION UNTIL THE DWELLING IS COMPLETED AND OCCUPIED;

5. LOSS CAUSED BY VANDALISM AND MALICIOUS MISCHIEF OR BREAKAGE OF GLASS AND SAFETY GLAZING MATERIALS IF THE DWELLING HAS BEEN VACANT FOR MORE THAN 30 CONSECUTIVE DAYS IMMEDIATELY BEFORE THE LOSS. A

DWELLING BEING CONSTRUCTED IS NOT CONSIDERED VACANT;

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE;

7. LOSS CAUSED BY:

* * * * *

c. SMOG, RUST OR OTHER CORROSION, MOLD, FUNGUS, WET OR DRY ROT;

We begin by noting that the terms of the policy indicated that Travelers would broadly insure against perils to the house with only certain enumerated exclusions and exceptions. We agree with the Reynoldses' assertion that a loss caused by theft under the circumstances presented here is not included among the enumerated exceptions and that the exception to coverage for losses caused by vandalism and malicious mischief is also inapplicable.

The plain language excluding coverage for loss from theft applies only to dwellings **under construction.** While the provisions of paragraph 5 limit coverage if the dwelling is left vacant for more than 30 consecutive days, that exception pertains expressly to a loss caused by **vandalism and malicious mischief**—as distinguished from a loss caused by **theft.** Paragraph 5 omits any mention of theft.

▇▇▇ "Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper, supra* at 873–874. In construing insurance policies, we must first examine the

clarity of the literal language and terminology. "[T]erms used in insurance contracts 'should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them.'" *Motorists Mutual Insurance Company v. RSJ, Inc.,* 926 S.W.2d 679, 680 (Ky.App. 1996) (quoting *City of Louisville v. McDonald,* 819 S.W.2d 319, 320 (Ky.App. 1991)).

▇▇▇ These terms of the Reynoldses' policy are clear and unambiguous. A literal reading of the exceptions indicates that the policy does not exclude coverage for a loss caused by theft **after** the construction of the home has been **completed.** Although the perimeter of the dwelling at Timber Ridge Road was being excavated in an effort to correct a drainage problem at the time of the loss, the dwelling itself was not *under construction* as that phrase is ordinarily understood. It is true that construction on the drainage system was occurring on the premises at the time of the theft in 2003. However, the construction of the house itself as contemplated by paragraph 4 of the policy had long since been completed—at least since 1994 when the Reynoldses moved in originally. Thus, the exclusion contained at paragraph 4 barring coverage for theft during construction does not apply.

▇▇▇ Paragraph 5 excludes coverage for a loss resulting from vandalism or malicious mischief when the targeted house has been vacant for more than 30 days. While the home had been vacant for more than 30 consecutive days, the loss was clearly not caused by *vandalism or malicious mischief* as those terms are commonly understood. Instead, the Reynoldses' loss in this case was plainly caused by the *theft* of the refrigerator during a period when the perimeter of the house was undergoing repairs. The enumerated exceptions do not apply to these facts, and

the trial court clearly erred by granting summary judgment on this ground.

■ Next, we shall consider the issue of coverage for losses caused by continuous or repeated seepage or leakage of water under these circumstances. The Reynoldses argue that the court erred in applying a policy exception precluding coverage. We agree with their contention that this exception does not apply.

The policy provision exempts from coverage a loss caused by the "continued or repeated ... leakage of water or steam **over a period of time, weeks, months or years,** from within a ... household appliance." (Emphasis added.) The Reynoldses contend that there was no proof that the water leaked for a period of time that included *weeks*. They contend that the water leaked for a period of time less than fourteen days. Travelers argues that the terms *period of time* and *weeks* refer to separate and discrete spans of time. "If the term 'time' meant weeks, months, or years, it would be mere surplus since those terms are included in the policy language." Appellee's brief at 12.

■ Ambiguous coverage exclusions are strictly construed so as to make insurance effective under the circumstances. *Kemper,* 82 S.W.3d at 873–874. If an insurance exclusion is subject to two reasonable interpretations, the interpretation which is more favorable to the insured must be adopted. *Motorists Mutual,* 926 S.W.2d at 680.

We are not persuaded that Travelers' construction of the provision is the "only plausible and reasonable interpretation." Appellee's brief at 12. We believe that the phrase "period of time" cannot reasonably be said to refer to a separate span of time somehow distinct from "weeks, months or years." Instead, we believe that the grammatical structure of the sentence informs

the ordinary person that a loss caused by the continuous or repeated leakage of water from a household appliance is not covered by the policy **if and only if** the leakage has occurred over a period of time that may be comprised of weeks, months, or years. The Reynoldses presented evidence tending to show that the theft occurred less than two weeks before it was discovered. Thus, the exception to coverage does not encompass the facts and circumstances of the loss at issue in this case. The trial court erred by granting summary judgment on this basis.

■ Finally, we shall consider whether the policy provision excluding a loss caused by mold applies to justify Travelers' rejection of the claim. We conclude that the exception does not apply to the facts and circumstances of this case.

There is no reason to doubt that the mold that developed in the Timber Ridge Drive residence was a direct result of the theft of their refrigerator—a covered peril as we have concluded. The Reynoldses contend that the cost of removing the mold was not a loss separate and apart from the loss resulting from the theft but that it was instead part and parcel of the covered loss—indeed, a direct and proximate result of the theft. Since there is no genuine issue of material fact with respect to the cause of the mold, we are satisfied that the costs associated with the removal of the mold are covered by the policy.

We are reinforced in our conclusion by the decision of our sister state in *Bowers v. Farmers Insurance Exchange,* 99 Wash. App. 41, 991 P.2d 734 (2000). In *Bowers,* the appellate court considered whether the insured had coverage for mold damage that had occurred as a result of acts of vandalism even though "loss caused by mold" was specifically excluded by the policy. Without the landlord's knowledge, her tenants had begun to use the dwelling

as a greenhouse for marijuana plants. As a consequence of the trapped heat and humidity, the residence became infested with mold. The court concluded that the insured's losses were covered under her policy **despite the express exception** for loss caused by mold. Applying the "efficient proximate cause doctrine," the court reasoned that the tenant's acts of vandalism were the proximate cause of the loss and that coverage under the policy properly included the mold damage. We find the reasoning underlying the decision to be sound, and it analogizes closely to our own analysis of the Reynoldses' loss in this case.

The judgment of the Marion Circuit Court is reversed, and we remand this case for entry of judgment in favor of the Reynoldses.

ALL CONCUR.