RENDERED:  JULY 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2020-CA-1067-MR

DENNIS PROBUS AND REBECCA
PROBUS                                                                 APPELLANTS


v.        APPEAL FROM JEFFERSON CIRCUIT COURT
          HONORABLE ANN BAILEY SMITH, JUDGE
          ACTION NO. 19-CI-007784


ALLSTATE INSURANCE CO. D/B/A
ALLSTATE INDEMNITY CO.                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  DIXON, GOODWINE, AND TAYLOR, JUDGES.

DIXON, JUDGE:  Dennis and Rebecca Probus appeal from the order granting

summary judgment in favor of Allstate Insurance Co. d/b/a Allstate Indemnity Co.

("Allstate") entered on August 2, 2020, by the Jefferson Circuit Court.  Following

a careful review of the record, briefs, and law, we affirm.

# FACTS AND PROCEDURAL BACKGROUND

In 2017, the Probuses purchased a vacation residence and insured it with Allstate. In 2018, the Probuses visited their vacation residence over Labor Day weekend. When they departed, they left the water on—but not running. Upon entering the residence on November 7, 2018, Mr. Probus discovered water and mold over a large portion of the residence and heard water leaking. He followed the sound and saw water spraying from a cracked plastic nut on the water supply line to the toilet. The Probuses reported the claim to Allstate.[1] An adjuster inspected the residence on January 14, 2019, and informed the Probuses that the damage was not covered under their policy.

On December 12, 2019, the Probuses filed the lawsuit herein alleging Allstate breached their insurance contract by failing to properly investigate and satisfy the claim. Allstate filed an answer and counterclaim, deposed the Probuses, and moved the trial court for summary judgment. After the matter was briefed, the trial court entered its opinion and order granting Allstate summary judgment because the damages were specifically excluded by the terms of the insurance contract. This appeal followed.

---

[1] Mr. Probus testified in his deposition that he reported the claim to Allstate sometime between November 14 and 16, 2018; Mrs. Probus testified in her deposition that they reported the claim to Allstate sometime between November 13 and 15, 2018.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App. 2000)).

## ANALYSIS

On appeal, the Probuses argue the trial court erred in granting summary judgment, alleging the existence of disputed material facts which must be tried by a jury. The first alleged disputed material fact is when the rupture in the waterline was discovered. Mr. Probus testified in his deposition that he discovered the rupture on November 7, 2018. A water bill has also been presented for the period ending November 1, 2018, showing much greater use for that billing period,

---

[2] Kentucky Rules of Civil Procedure.

which began on October 2, 2018.  It has not been established when exactly the water bill was received; however, this issue—while potentially disputed—is not a material one that would change the interpretation of the insurance contract.  The contract excludes damage caused by:

> 16.  Seepage, meaning continuous or repeated seepage or **leakage over a period of weeks, months, or years**, of water, steam or fuel:
>
>> a)  from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
>>
>> b)  from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

ROA[3] 90-91 (emphasis added).  Here, Mr. Probus testified that the water had entered the residence for a period of "four weeks or better."  Thus, whether the incoming water was discovered on November 1 or 7, 2018, is immaterial—either date still constitutes a period of weeks—and would not otherwise preclude the trial court's grant of summary judgment.

According to the Probuses, the next disputed issue of material fact is: "what is the efficient proximate cause of the damage?"  They concede the "actual cause is clear because the water was spraying from the cracked plastic nut.  The

---

[3] Record on appeal.

damage caused by the rupture was caused by the water escaping from the cracked plastic nut." Here—contrary to the Probuses' assertions—the facts are not in dispute; rather, the Probuses are challenging the trial court's legal conclusions concerning application of the insurance contract to those facts. Because the construction and interpretation of a contract is a matter of law, it is reviewed under the *de novo* standard. *Nelson v. Ecklar*, 588 S.W.3d 872, 878 (Ky. App. 2019), *review denied* (Dec. 13, 2019).

The Probuses cite *Smith v. Higgins*, 819 S.W.2d 710 (Ky. 1991), in support of their argument that the trial court incorrectly construed the insurance contract. However, *Smith* concerned interpretation of the Motor Vehicle Reparations Act, not an insurance contract. The Probuses also cite *Reynolds v. Travelers Indemnity Company of America*, 233 S.W.3d 197 (Ky. App. 2007), which concerned interpretation of a similar insurance contract to the one herein.

In *Reynolds*, a refrigerator was stolen from the Reynoldses' residence and the water left on, which caused water to leak in the home. The Reynoldses reported the theft and subsequent water and mold damage to their insurance carrier within two weeks. That panel of our Court opined:

> The policy provision exempts from coverage a loss caused by the "continued or repeated . . . leakage of water or steam **over a period of time, weeks, months or years**, from within a . . . household appliance." (Emphasis added.) The Reynoldses contend that there was no proof that the water leaked for a period of time

-5-

that included *weeks*. They contend that the water leaked for a period of time less than fourteen days. Travelers argues that the terms *period of time* and *weeks* refer to separate and discrete spans of time. "If the term 'time' meant weeks, months, or years, it would be mere surplus since those terms are included in the policy language." Appellee's brief at 12.

Ambiguous coverage exclusions are strictly construed so as to make insurance effective under the circumstances. [*Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc*., 82 S.W.3d 869, 873-74 (Ky. 2002)]. If an insurance exclusion is subject to two reasonable interpretations, the interpretation which is more favorable to the insured must be adopted. [*Motorists Mut. Ins. Co. v. RSJ, Inc*., 926 S.W.2d 679, 680 (Ky. App. 1996)].

. . . We believe that the phrase "period of time" cannot reasonably be said to refer to a separate span of time somehow distinct from "weeks, months or years." Instead, we believe that the grammatical structure of the sentence informs the ordinary person that a loss caused by the continuous or repeated leakage of water from a household appliance is not covered by the policy **if and only if** the leakage has occurred over a period of time that may be comprised of weeks, months, or years. The Reynoldses presented evidence tending to show that the theft occurred less than two weeks before it was discovered. Thus, the exception to coverage does not encompass the facts and circumstances of the loss at issue in this case. The trial court erred by granting summary judgment on this basis.

*Id*. at 202.

Here, although the facts are distinguishable from *Reynolds* in that coverage was properly denied, the same logic applies concerning the interpretation of the insurance contract. The phrase "over a period of weeks, months, or years"

must not be overlooked. Because there is no dispute that the water entered the residence for a period of weeks, the claim was properly denied, and summary judgment properly granted. Furthermore, we agree with the trial court's assessment concerning the Probuses' semantic argument that the water line rupture did not constitute a "leak." The damage to their residence was clearly caused by a leak as the term is understood by ordinary people. Mr. Probus even characterized it as such in his deposition. (*See* ROA 25, deposition of Mr. Dennis Probus, Feb. 14, 2020, p. 19, lines 20-21. "I could hear the noise of a water leak.")

The Probuses' final, albeit cursory, argument is that their policy's discussion of mold damage "does not apply in this case because the proximate and efficient cause of the loss was a rupture of the plastic nut, which released water throughout the entire house" rather than a "leak," as discussed above. In *Reynolds*, the Court observed:

> Finally, we shall consider whether the policy provision excluding a loss caused by mold applies to justify Travelers' rejection of the claim. We conclude that the exception does not apply to the facts and circumstances of this case.
>
> There is no reason to doubt that the mold that developed in the Timber Ridge Drive residence was a direct result of the theft of their refrigerator—a covered peril as we have concluded. The Reynoldses contend that the cost of removing the mold was not a loss separate and apart from the loss resulting from the theft but that it was instead part and parcel of the covered loss—indeed, a direct and proximate result of the theft. Since there is no genuine

-7-

issue of material fact with respect to the cause of the mold, we are satisfied that the costs associated with the removal of the mold are covered by the policy.

*Reynolds*, 233 S.W.3d at 202.  Here, there is no reason to doubt that the mold that developed in the Probuses' residence was a direct result of the water leak from the cracked water supply line nut, which was *not* a covered peril under their insurance policy.  Accordingly, and under the terms of the insurance policy herein,[4] the mold

---

[4]  Concerning mold, the policy at issue provides:

> C.  **We** do not cover loss to the property described in **Coverage A-Dwelling Protection** or **Coverage B-Other Structures Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria.  This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.
>
> This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions-Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**
>
> . . .
>
> C.  **We** do not cover loss to the property described in **Coverage C-Personal Property Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria.  This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.
>
> This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions -Mold, Fungus,**

damage was not a covered loss.  Thus, the trial court did not err in granting summary judgment in favor of Allstate.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Jefferson Circuit Court is AFFIRMED.


ALL CONCUR.


BRIEF FOR APPELLANTS:

Dennis R. Carrithers
Louisville, Kentucky

BRIEF FOR APPELLEE:

A. Campbell Ewen
William P. Carrell, II
Louisville, Kentucky

---

**Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

. . .

19.  **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**
In the event of a covered water loss under **Coverage A-Dwelling Protection, Coverage B-Other Structures Protection** or **Coverage C-Personal Property Protection, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation.**

ROA 91, 96, 105 (emphasis in original).