RENDERED:  DECEMBER 22, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0834-MR


HEATHER JONES, AS SISTER OF
NICOLE WAGNER AND AS
ADMINISTRATRIX AND ON
BEHALF OF THE ESTATE OF
NICOLE WAGNER; AND BETTY
THOMPSON, AS MOTHER OF
NICOLE WAGNER                                                    APPELLANTS


                    APPEAL FROM HARRISON CIRCUIT COURT
v.                  HONORABLE JAY B. DELANEY, JUDGE
                    ACTION NO. 20-CI-00085


ACUITY, A MUTUAL INSURANCE COMPANY                      APPELLEE


                              OPINION
                              AFFIRMING

                        ** ** ** ** **

BEFORE:  CETRULO, COMBS, AND GOODWINE, JUDGES.

CETRULO, JUDGE:  This appeal results from the Harrison Circuit Court order

granting summary judgment for the Appellee insurance company, finding that no

insurance coverage existed under the commercial general liability policy – covering Donald Bottoms's ("Bottoms")[1] plumbing business – for the fatal shooting of Nicole Wagner ("Wagner"). After careful review, we affirm.

## I. FACTS AND BACKGROUND

On the night of April 18, 2020, Bottoms, Wagner, and friends were spending time together at Bottoms's place of business, Three D Plumbing, which also contained an apartment inside. In the early hours of April 19, after spending time in the apartment (consuming food and alcohol), Bottoms drove Wagner and her friends to Wagner's home. According to Bottoms, Wagner refused to leave his vehicle, and he attempted to scare her out of his vehicle with a gun he kept under a seat. It is unclear exactly what happened, but during a struggle and/or accident the gun discharged, and Bottoms shot Wagner, killing her.

In January 2021, Bottoms pled guilty to second-degree manslaughter. Kentucky Revised Statute ("KRS") 507.040. This statute states, "[a] person is guilty of manslaughter in the second degree when he wantonly causes the death of another person[.]" KRS 507.040(1).

KRS 501.020(3) defines "wantonly":

A person acts wantonly with respect to a result or to a
circumstance described by a statute defining an offense
when he is aware of and consciously disregards a

---

[1] Donald Bottoms is not a party to this appeal; in an order entered on October 18, 2022, this Court granted his motion to be dismissed.

substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Subsequently, Bottoms was sentenced to 10 years of imprisonment.

In May 2020, Heather Jones ("Jones"), as Administratrix of Wagner's estate,[2] filed a complaint in Harrison Circuit Court for the wrongful death of her sister, Wagner. Acuity, A Mutual Insurance Company, intervened to litigate the insurance coverage issues on behalf of the insured, Bottoms. At the time of the shooting, Acuity insured Bottoms's business, Three D Plumbing, with two coverage parts: commercial general liability coverage ("CGL") and commercial auto coverage. Only the CGL is pertinent to this appeal.[3] The CGL policy covers "bodily injury. . . caused by an occurrence that takes place in the coverage territory" to an insured individual "only with respect to the conduct of a business," but specifically excludes bodily injury "expected or intended" from the "standpoint of the insured." Specifically, Bottoms's commercial general liability coverage contract stated:

---

[2] Betty Thompson, Wagner's mother, is also a party to this appeal, but for simplicity we will refer only to the lead appellant, Jones.

[3] In circuit court, Jones challenged both policies, general and auto. The circuit court determined that the shooting did not fall within the "ownership, maintenance, or use" of Bottoms's vehicle and therefore the shooting was not covered by the commercial auto policy. On appeal, Jones does not contest the circuit court's findings on the auto coverage issue.

## LIABILITY AND MEDICAL EXPENSES COVERAGES

**1. Business Liability**

    a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of *bodily injury*, *property damage* . . . .

    . . . .

    b.   This insurance applies:

      (1)   To *bodily injury* or property *damage* only if:

        (a) The bodily injury or property damage is caused by an occurrence that takes place in the *coverage territory*; . . . .

    . . . .

    e.   Damages because of *bodily injury* include damages claimed by any person or organization for care, loss of services or death resulting at any time from the *bodily injury*. . . .

    . . . .

## EXCLUSIONS

**1. Applicable to Business Liability Coverage**

**This Insurance does not apply to:**

    a.   Expected or Intended Injury

       Bodily injury or property damage expected or intended from the standpoint of the insured. . . .

    . . . .

## WHO IS AN INSURED

1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are
        insureds, **but only with respect to the conduct
        of a business** of which are the sole owner.

(CGL ACUITY POLICY X13227) (some emphasis added).

In January 2021, the parties (and Bottoms) entered a "Master Settlement" Agreement, which included, in part, Wagner's estate receiving the interest in Bottoms's commercial insurance policies.  Thereafter, Jones moved for summary judgment and declaratory judgment, which the circuit court denied.  Acuity cross-motioned for summary judgment, which the circuit court granted.  In relevant part, the circuit court found that

> the [CGL] policy language unambiguously excluded
> intentional or expected injuries such as the fatal shooting
> from coverage, Bottoms'[s] guilty plea to wanton
> manslaughter bars any re-litigation on his intent during
> the shooting, and no genuine issue of material fact exists
> regarding whether Bottoms was promoting his business
> on the night of the shooting, warranting summary
> judgment on all of Acuity's claims.

Jones appealed.  Additional facts will be added as necessary.

## II.    STANDARD OF REVIEW

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as

-5-

a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing Kentucky Rules of Civil Procedure ("CR") 56.03). "[S]ummary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citing *Steelvest v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480-82 (Ky. 1991)).

However, the Kentucky Supreme Court has held that the word "impossible," as set forth in the standard for summary judgment, is meant to be "used in a practical sense, not in an absolute sense." *Id.* at 436 (citation omitted). Consequently, "the focus should be on what is of record rather than what might be presented at trial." *Welch v. Am. Publ'g Co. of Kentucky*, 3 S.W.3d 724, 730 (Ky. 1999). All facts and inferences in the record are viewed in a light most favorable to the nonmoving party and "all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480 (citation omitted). Because the circuit court granted Acuity's motion for summary judgment, and because interpretation and construction of an insurance contract is a matter of law, we review the raised issues *de novo*, giving no deference to the circuit court. *Isaacs v. Sentinel Ins. Co. Ltd.*, 607 S.W.3d 678, 681 (Ky. 2020) (citations omitted).

## III. ANALYSIS

On appeal, the parties mainly argue the applicability of the "expected and intended" exclusion; however, that is not where our analysis begins. Before we assess the applicability of the exclusion, we must *first* ask: does the shooting fall within the coverage provided by the CGL? If the shooting *does* fall within CGL coverage, *then* we ask if any exclusions apply. If the shooting *does not* fall within the terms of the GLC, then there is no need to ask if the exclusions are applicable because coverage is already denied. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 78 n.35 (Ky. 2010) (citation omitted) ("[A] court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy.").

"Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Reynolds v. Travelers Indem. Co. of Am.*, 233 S.W.3d 197, 201 (Ky. App. 2007) (quoting *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873-74 (Ky. 2002)). When determining whether the policy is clear and unambiguous, the insurance contract terms "should be given their ordinary meaning as persons with the ordinary and usual understanding would construe them." *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 681 (Ky. App. 1996) (quoting *City of Louisville v. McDonald*, 819 S.W.2d 319, 320 (Ky. App. 1991)). Additionally, the courts must reasonably

interpret insurance policies consistent with the parties' "object and intent." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226 (Ky. 1994).

Here, Bottoms's and Acuity's "object and intent" was to insure Bottoms's plumbing business. Looking at the clear language of Bottoms's CGL policy, the terms covered bodily injury that occurred only "with respect to the conduct of a business." "It is impractical to extend insurance coverage outside the field which it is intended to cover." *Com. Union Assur. Cos. v. Howard*, 637 S.W.2d 647, 649 (Ky. 1982). Here, we agree with the circuit court that the "contract expressly and unambiguously states that only the insured are covered under the policy and the triggering event must be within the conduct of business."

In response, Jones claims that the social gathering on the night of Wagner's death was within the conduct of Bottoms's plumbing business. Specifically, Jones argues that the events leading up to the shooting included the promotion of Three D Plumbing and the "building of goodwill," thereby falling under the umbrella of actions taken "with respect to the conduct of a business." To support this contention, Jones presented an affidavit from a former Three D Plumbing client who stated (1) that she hired Bottoms after attending a social gathering at Bottoms's apartment, and (2) that Bottoms frequently promoted his plumbing business at such events.

Additionally, Jones submitted a photograph of Bottoms, Wagner, and three other people "poised in a luxury bathtub in [] Bottoms'[s] place of business during the social gathering which ended with the shooting of [Wagner]."[4] In contrast, Acuity argues that Bottoms stated in his affidavit that the events leading up to the shooting were not business related; the plumbing client affidavit was irrelevant because she was not present on the night in question; and the undated photograph does not equate to conducting plumbing business. We agree with Acuity.

"The review of summary judgment on appeal does not involve fact finding." *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 895 (Ky. 2013). However, we must review from a practical perspective: the inability to prevail at trial must be a matter of practical impossibility, not absolute impossibility. *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). A plaintiff responding to a defendant's properly supported summary judgment motion is obliged "to show that evidence is available justifying a trial of the issue involved." *Continental Cas. Co.*

---

[4] Jones also argued a second issue of material fact – a letter from a medical professional – but that letter is not on appeal before this Court. The order on appeal states "[t]he Court does not reach the issue of judicial notice under [Kentucky Rules of Evidence ("KRE")] 203 of Dr. Armstrong's letter, which the Court would decline to do regardless since Acuity opposed the introduction of her letter and this would necessitate a *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993),] hearing." We are "without authority to review issues not raised in or decided by the trial court." *D.W. Wilburn, Inc. v. H&H Painting, LLC*, 648 S.W.3d 687, 693 (Ky. App. 2022) (citing *Fischer v. Fischer*, 197 S.W.3d 98, 102 (Ky. 2006)).

-9-

*v. Belknap Hardware & Mfg. Co.*, 281 S.W.2d 914, 916 (Ky. 1955); *see also*

*Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 573 (Ky. App. 2005) (quoting

*Neal v. Welker*, 426 S.W.2d 476, 479 (Ky. 1968)).  Unsupported suppositions are

not sufficient to save a claim from dismissal.  *O'Bryan v. Cave*, 202 S.W.3d 585,

588 (Ky. 2006) (quoting *Chesapeake & Ohio Ry. Co. v. Yates*, 239 S.W.2d 953,

955 (Ky. 1951)).  Here, Jones needed to present affirmative evidence in order to

defeat Acuity's motion for summary judgment but has not done so.  *See Steelvest*,

807 S.W.2d at 481.  Jones did not present affidavits from the other people present

on the night in question stating that Bottoms was conducting plumbing business

that evening.  The client affidavit was not from someone present with Wagner

and/or Bottoms on April 18 or 19; thus, it was not based upon any personal

knowledge of the events leading up to the shooting.  Further, text messages

between Bottoms and Wagner on that fateful evening do not reference plumbing.

Bottoms asserted in his affidavit that none of his activities of April 18 and 19

"were related in any way to my occupation or business as plumber."  Instead, he

stated that the evening was "for purely personal, social, and nonbusiness reasons."

Jones was unable to link Bottoms's plumbing business to the shooting – a shooting

which occurred in Bottoms's vehicle while it was parked in Wagner's driveway

after a night of socializing.  Further, while the photograph *did* technically show a

bathtub and part of a faucet, that alone does not correlate to conducting plumbing

-10-

business. Stated another way, just because a chicken has wings does not mean it can fly.

Generally, "[CGL] policies are designed to protect the insured against losses to third parties arising out of the operation of the insured's business. Consequently, a loss must arise out of the insured's business operations in order to be covered under the policy issued to the insured." PLITT, MALDONADO, ROGERS, AND PLITT, 9A *Couch on Insurance* § 129:2 (3rd ed. 2022) (citations omitted). This Court has found that commercial insurance policies, intended for strictly business purposes, do not provide coverage for purely personal and recreational activities. *Parsley for Parsley v. Cincinnati Ins. Co.*, No. 2020-CA-0858-MR, 2021 WL 3698848, at *6 (Ky. App. Aug. 20, 2021). In *Parsley*, the defendant, while on personal property, caused injury to the plaintiff while driving an ATV that was presumably owned by his business. This Court determined the commercial policy was intended to provide coverage for the **business** and, therefore, purely personal and recreational activities were outside the scope of the policy. *Id.*[5]

Although further analysis is not necessary, we note that even if the commercial policy somehow covered the shooting, the circuit court was correct in determining the "expected or intended" exclusion precludes coverage. "There is

___

[5] While not binding, we find this unpublished opinion to be persuasive and current.

-11-

no question but that a criminal conviction can be used for purposes of collateral estoppel in a later civil action. It is required, however, that the judgment so utilized constitute a final decision on the merits." *Roberts v. Wilcox*, 805 S.W.2d 152, 153 (Ky. App. 1991) (citations omitted). A guilty plea is a final decision on the merits; Kentucky courts do not distinguish between pleas of guilty and jury adjudications of guilty. *Ray v. Stone*, 952 S.W.2d 220 (Ky. App. 1997). *See also Commonwealth v. Tigue*, 459 S.W.3d 372, 389 (Ky. 2015) ("Like a verdict of a jury[,] [a plea of guilty] is conclusive."). Here, Bottoms pled guilty to second degree manslaughter, *i.e.*, wanton manslaughter. "A person acts wantonly . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020(3). By pleading guilty to "wanton" behavior – admitting he was aware of and consciously disregarded a substantial and unjustifiable risk – he is admitting the injury was "expected." That guilty plea is final and cannot be undone here. Therefore, Bottoms's guilty plea precludes any re-litigation as to his actions being "expected"[6] and the "expected or intended" injury exclusion also applies.

---

[6] The parties argue the applicability of three cases, but we do not find them necessary or necessarily dispositive because these cases present a more complex conversation as to "intent" and "intentional acts": *Maxum Indemnity Company v. Broken Spoke Bar & Grill, LLC*, 420 F. Supp. 3d 617 (W.D. Ky. 2019), dealt with a wanton **murder** conviction when a gun went off as the defendant was "pistol whipping" the victim; *Parsley v. Kentucky Farm Bureau Mutual Insurance Company*, 32 S.W.3d 103 (Ky. App. 2000), dealt with charges that resulted from the defendant beating, kidnapping, and throwing a victim off a bridge; and *Gossage v. Roberts*, 904

-12-

## IV.    CONCLUSION

Viewing the record in a light most favorable to Jones, we AFFIRM the Harrison Circuit Court's order granting Acuity's motion for summary judgment and denying Jones's motion for summary judgment. Here, there were no issues as to any material fact and Acuity was entitled to judgment as a matter of law. Because Bottoms's actions on the night in question were not covered under the terms of the Acuity commercial policy, and the "expected or intended" exclusion would have been applicable if they were, Jones could not prevail under any circumstances.

ALL CONCUR.


BRIEFS FOR APPELLANTS:

Alfred J. Welsh
Louisville, Kentucky

David R. Vandeventer
Lexington, Kentucky

BRIEF FOR APPELLEE:

Kenneth A. Calderone
Akron, Ohio

---

S.W.2d 246, 250 (Ky. App. 1995), dealt with a defendant who was "convicted of a crime involving intentional conduct[.]"