[No. 4670-9-II.  Division Two.  May 21, 1984.]

HARRISON PLUMBING & HEATING, INC., *Appellant,* v. NEW HAMPSHIRE INSURANCE GROUP, *Respondent.*

*Richard F. DeJean,* for appellant.

*Dennis J. LaPorte* and *Charles W. Langfitt,* for respondent.

WORSWICK, J.—In 1977, Harrison Plumbing and Heating, Inc., contracted to build a water system for Dan Perkins and Paul Garrison. Problems developed between the parties, and Harrison brought a lien foreclosure action. Perkins and Garrison counterclaimed, contending that Harrison failed to complete work required by the contract. Harrison tendered defense of the counterclaim to New Hampshire Insurance Group, its insurer under a comprehensive general liability policy. New Hampshire refused the tender, contending that the counterclaim did not allege facts which, if proved, would render it liable under the policy.

Harrison successfully defended the counterclaim, then sued New Hampshire to recover attorney's fees incurred in the defense. The facts being undisputed,[1] both parties

---

[1] The only "facts" in the record concerning the counterclaim are its allegations. The record is completely silent as to the underlying basis for the allegations.

moved for summary judgment. The trial court granted New Hampshire's motion. Harrison appeals. We affirm.

■ Generally, an insurer's duty to defend arises when a complaint against its insured alleges facts which, if proved, would render the insurer liable under the policy. *Parks v. Western Wash. Fair Ass'n,* 15 Wn. App. 852, 553 P.2d 459 (1976). If the pleadings are not ambiguous, the insurer need not look beyond them. *R.A. Hanson Co. v. Aetna Ins. Co.,* 26 Wn. App. 290, 612 P.2d 456 (1980). Harrison contends that the facts alleged in the Perkins–Garrison counterclaim would, if proved, render New Hampshire liable under the policy. We disagree.

The counterclaim alleged:

(I)
That on July 7, 1977, defendants [Perkins–Garrison] entered into a contract with plaintiff [Harrison] to install a water system to serve certain real property in Pierce County, Washington; that plaintiff failed, neglected and refused to complete the work in accordance with the terms of the contract and as a result thereof defendants have been damaged to date in the sum of $15,266.50.

(II)
That because of plaintiff's failure to fulfill the terms of the contract to install a water system in accordance with the terms of his agreement with defendants, defendants will be required to pave over excavations improperly dug by plaintiff to their further loss and damage in the sum of not less than $5,000.00.

(III)
That because of plaintiff's refusal to complete the water system, defendants have suffered a loss of business reputation and goodwill among members of the public which has hampered sale of lots owned by defendants and defendants have been damaged thereby in the sum of not less than $10,000.

The policy provided, in part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. Bodily injury or
B. Property damage

to which this insurance applies, caused by an occurrence, . . .

The policy defined property damage as:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period; . . .

The policy defined "occurrence" as:

. . . an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured; . . .

"Accident" was not defined further in the policy. Therefore, the term must be given its popular and ordinary meaning. *Transamerica Ins. Co. v. Preston,* 30 Wn. App. 101, 632 P.2d 900 (1981). An "accident" generally means an unusual, unexpected and unforeseen event. *Tieton v. General Ins. Co. of Am.,* 61 Wn.2d 716, 380 P.2d 127 (1963). An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978). To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual. *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. at 264.

Neither paragraphs I or III allege accidental injury or damage.[2] Rather, both allege breaches of contract, and intentional acts and foreseeable results.[3]

---

[2] Neither do they allege property damage. Harrison concedes that bodily injury was not alleged.

[3] At oral argument, counsel for Harrison claimed that his unrebutted affidavit establishes the fact he informed New Hampshire that the Perkins–Garrison claim involved allegations of accidental property damage. Counsel contends New Hampshire was therefore obligated to defend Harrison, citing *R.A. Hanson,* 26

Paragraph II presents a different question because, at least arguably, it can be construed as alleging damage to or loss of use of tangible property caused by Harrison's negligence. For the purposes of this policy, a negligent act or omission is an "accident" and, consequently, an "occurrence." *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 608 P.2d 254 (1980). Nevertheless, the New Hampshire policy excluded this claim as well.

The policy provided:

> This insurance does not apply to . . . property damage . . . to . . . that particular part of any property, not on premises owned by or rented to the insured, . . . the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured; . . .[4]

Wn. App. at 294. It is true an insurer may not merely rely on allegations in the pleadings when they conflict with facts known to or ascertainable by the insurer. *R.A. Hanson*, 26 Wn. App. at 294. However, counsel merely stated in his affidavit,

> I tendered defense of this counter-claim to New Hampshire Insurance Group on at least three separate occasions and made them fully aware of the contract, the counter-claim and all of the allegations and pleadings exchanged between the parties.

This statement does not establish that New Hampshire knew Perkins and Garrison claimed accidental property damage.

[4]Harrison contends this language was part of a section extending liability coverage, and should not be read as an exclusion. We disagree. The language extracted in the text is from an endorsement which, in its entirety, read as follows: "It is agreed that paragraph 2(y), broad form property damage of liability extension endorsement, POP 316 is amended to read as follows:

(i) TO PROPERTY DAMAGE

(1) TO PROPERTY OWNED OR OCCUPIED BY OR RENTED TO THE INSURED, OR, EXCEPT WITH RESPECT TO THE USE OF ELEVATORS, TO PROPERTY HELD BY THE INSURED FOR SALE OR ENTRUSTED TO THE INSURED FOR STORAGE OR SAFEKEEPING,

(2) EXCEPT WITH RESPECT TO LIABILITY UNDER A WRITTEN SIDETRACK AGREEMENT OR THE USE OF ELEVATORS TO

(a) PROPERTY WHILE ON PREMISES OWNED BY OR RENTED TO THE INSURED FOR THE PURPOSE OF HAVING OPERATIONS PERFORMED ON SUCH PROPERTY OR ON BEHALF OF THE INSURED,

(b) TOOLS OR EQUIPMENT WHILE BEING USED BY THE INSURED IN PERFORMING HIS OPERATIONS,

(c) PROPERTY IN THE CUSTODY OF THE INSURED WHICH IS TO BE INSTALLED, ERECTED OR USED IN CONSTRUCTION BY THE INSURED,

Therefore, even if Garrison and Perkins were required to repair property damage caused by workmanship of Harrison that was faulty because of negligence, the policy excluded that risk from coverage. The policy was not intended to indemnify Harrison for direct damages resulting because Harrison furnished defective materials or workmanship. *St. Paul Fire & Marine Ins. Co. v. Coss,* 80 Cal. App. 3d 888, 145 Cal. Rptr. 836 (1978). Because the facts alleged in the counterclaim would not make New Hampshire liable under its policy the trial court did not err in ruling New Hampshire had no duty to defend.

Harrison contends that an exception to exclusion (a) of the basic policy amended the coverage paragraph to extend

---

(d) THAT PARTICULAR PART OF ANY PROPERTY, NOT ON PREMISES OWNED BY OR RENTED TO THE INSURED

    (i) UPON WHICH OPERATIONS ARE BEING PERFORMED BY OR ON BEHALF OF THE INSURED AT THE TIME OF THE PROPERTY DAMAGE ARISING OUT OF SUCH OPERATIONS, OR

    (ii) OUT OF WHICH ANY PROPERTY DAMAGE ARISES, OR

    (iii) THE RESTORATION, REPAIR OR REPLACEMENT OF WHICH HAS BEEN MADE OR IS NECESSARY BY REASON OF FAULTY WORKMANSHIP THEREON BY OR ON BEHALF OF THE INSURED; BUT SUB-SECTIONS 2(c), 2(d)(i) AND 2(d)(ii) OF THIS EXCLUSION DO NOT APPLY TO THE FIRST $25,000 OF DAMAGES FOR "EACH OCCURRENCE" THAT WOULD OTHERWISE BE INSURED BUT FOR THE APPLICATION OF THE FOREGOING SUBSECTIONS.

THE INSURANCE AFFORDED BY THIS ENDORSEMENT SHALL BE EXCESS INSURANCE OVER ANY VALID AND COLLECTIBLE PROPERTY INSURANCE (INCLUDING ANY DEDUCTIBLE PORTION THEREOF) AVAILABLE TO THE INSURED, SUCH AS BUT NOT LIMITED TO FIRE AND EXTENDED COVERAGE, BUILDER'S RISK COVERAGE OR INSTALLATION OF RISK COVERAGE, AND THE "OTHER INSURANCE" CONDITION IS AMENDED ACCORDINGLY.

The broad form property damage liability extension endorsement, POP 316, did not have a paragraph 2(y). Nevertheless, it is clear from reading the policy that the above amendment replaced paragraph II(A) of the broad form property damage liability extension endorsement, POP 316. The above amendment was exactly the same as paragraph II(A), except that it added the next to the last paragraph which, in effect, did provide coverage for the first $25,000 of damages for each occurrence in subsections 2(c), 2(d)(i) and 2(d)(ii). Paragraph II(A) was a replacement of exclusions (k) and (o) in the basic comprehensive general liability policy. Therefore, in amending paragraph II(A), the above amendment replaced exclusions (k) and (o). In short, one exclusion replaced another exclusion. No coverage was added.

coverage for the breach of contract claims alleged in the counterclaim. We disagree.

■ Exclusion (a) provided:

This insurance does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract;[5] but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner; . . .

Exclusion clauses do not grant coverage; rather, they subtract from it. *Stillwater Condominium Ass'n v. American Home Assur. Co.*, 508 F. Supp. 1075 (D. Mont. 1981), *aff'd*, 688 F.2d 848 (9th Cir. 1982), *cert. denied*, 460 U.S. 1038 (1983); *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979). Therefore, exclusion (a) did not enlarge upon the coverages to encompass nonaccidental contractual claims. Harrison nevertheless argues that, because exclusion (a) appeared to grant coverage and the exclusion discussed above in footnote 4 appeared to deny it, an ambiguity was created which we must construe in Harrison's favor. We disagree.

■ This argument is based on two false assumptions. First, it assumes that exclusions grant coverage. They do not. Second, it assumes that the exclusions must be harmonized with each other. This is not true. Each exclusion refers to the risks insured against in the coverages and not to the other exclusions. *St. Paul Fire & Marine Ins. Co. v. Coss*, 145 Cal. Rptr. at 841. Each exclusion is to be read with the insuring agreement, independently of each other exclusion. *Stillwater Condominium Ass'n v. American Home Assur. Co.*, 508 F. Supp. at 1079; *Weedo v. Stone–E–Brick, Inc.*, 405 A.2d at 795. Read in this way, there is no ambiguity in this policy requiring us to construe it in favor of coverage.

Finally, Harrison contends that the New Hampshire pol-

---

[5]An "incidental contract" was defined as "any contract or agreement relating to the conduct of the named insured's business."

icy is meaningless if it does not cover the claims alleged in the counterclaim. We disagree. *Accidental* injury to persons and damage to property other than the product or completed work itself constitute the risks covered by this comprehensive general liability policy. *See Weedo v. Stone–E–Brick, Inc.,* 405 A.2d at 791–92. What Harrison really contends is that the policy was a performance bond. It was not.

Affirmed.

PETRICH, C.J., and PETRIE, J., concur.