KEMPER NATIONAL INSURANCE COMPANIES and American Motorists Insurance Company, Appellants,

v.

HEAVEN HILL DISTILLERIES, INC., Appellee.

No. 2000–SC–0982–DG.

Supreme Court of Kentucky.

Aug. 22, 2002.

J. Denis Ogburn, Alber Crafton, PLLC, Louisville, for Appellants.

Kenneth Gregory Haynes, Merrill S. Schell, Wyatt, Tarrant & Combs, Louisville, for Appellee.

JOHNSTONE, Justice.

On November 7, 1996, a fire ravaged the Heaven Hill facility located in Nelson County, Kentucky. The fire destroyed seven warehouses containing bourbon whiskey. Heaven Hill had already sold the bourbon to various customers and was merely storing it while it aged, prior to bottling. The owners of the bourbon, through their insurance companies as subrogees, sued Heaven Hill claiming negligence. Most of the litigation was consolidated in the Jefferson Circuit Court in *Frank Linn Distilled Products Limited, et al. v. Heaven Hill Distilleries, Inc.*, Civil Action No. 97–CI–2057. As a result of that litigation, Heaven Hill paid several million dollars in damages to its customers. In turn, Heaven Hill made a demand for coverage under the commercial general liability policy it purchased from American Motorists Insurance Company, a subsidiary of Kemper.

Kemper denied the claim for coverage and declined to defend the *Frank Linn* litigation under a reservation of rights. Kemper then filed a declaration of rights action in Jefferson Circuit Court. That court granted Kemper's motion for summary judgment. Heaven Hill appealed to the Court of Appeals, which reversed. Now Kemper appeals to this Court and, after careful consideration, we reverse the Court of Appeals' decision and reinstate the circuit court's summary judgment order.

## SUMMARY JUDGMENT

■ Summary judgment is proper when there exists no material issue of fact and the movant is entitled to judgment as a matter of law. *Steelvest, Inc., v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991). CR 56.03. Interpretation and construction of an insurance contract is a matter of law for the court. *See Morgan-*

*field National Bank v. Damien Elder & Sons*, Ky., 836 S.W.2d 893, 895 (1992); *Stone v. Kentucky Farm Bureau Mutual Insurance Company*, Ky.App., 34 S.W.3d 809, 810 (2000).

## THE POLICY

The first step in resolving this issue is to examine the language of the insurance policy. The policy was drafted in such a way that the insuring agreement affords coverage in broad-brush fashion:

SECTION I —COVERAGES

COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or *"property damage" to which this insurance applies.* We will have the right and duty to defend any "suit" seeking those damages.... (Emphasis added).

The policy defines "property damage" as follows:

SECTION V —DEFINITIONS

....

15. "Property damage" means:
 a. Physical injury to tangible property, including all resulting loss of use of that property....
 b. Loss of use of tangible property that is not physically injured....

But the policy contains numerous exclusions, "whose function it is to restrict and shape the coverage otherwise afforded." *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 790 (1979). We focus our attention on two of those exclusions: the Pollution Exclusion and the Care, Custody or Control Exclusion. The Pollution Ex-

clusion is modified by an endorsement, which Heaven Hill purchased after the original policy. The Pollution Exclusion reads as follows:

2. Exclusions [to the Insuring Agreement]

This insurance does not apply to:

. . . .

f. Pollution

1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

a) At or from any premises, site or location which is or was at any time owned or occupied by or rented or loaned to, any insured;

. . . .

Subparagraph[ ] a) . . . do[es] not apply to "bodily injury" or "*property damage*" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

. . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. (Emphasis added).

■ Heaven Hill purchased the following endorsement, which is an exception to the Pollution Exclusion of the original policy:

EXCEPTION TO POLLUTION EXCLUSION—LIMITED ON–PREMISES COVERAGE

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Subparagraph[ ] 1) a) . . . of *Exclusion f. . . . do[es] not apply* to "bodily injury" or damage to *personal property of others,* including all resulting loss of use of such property, occurring on any premises, site or location which is owned by or rented to any insured, resulting from the sudden and accidental discharge, dispersal, release or escape of pollutants on such premises, site or location. (Emphasis added).

## EXCLUSION CONFUSION

Heaven Hill first argues that the fire that destroyed the warehouses resulted from "pollutants" as defined in the policy, and the Endorsement, which specifically refers to "damage to the personal property of others," covers that damage. Initially, we note that we are not convinced that the Pollution Exclusion applies to this case because there was arguably no "pollutant." *See Motorists Mutual Insurance Company v. RSJ, Inc.,* Ky.App., 926 S.W.2d 679, 682 (1996). Assuming, arguendo, that the Pollution Exclusion does apply, Heaven Hill's argument still fails.

■ It is elementary that the Pollution Exclusion denies coverage because "exclusion clauses do not grant coverage; rather, they subtract from it." *Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group,* 37 Wash.App. 621, 681 P.2d 875, 880 (1984); *see also Stillwater Condominium Association v. American Home Assurance Company,* 508 F.Supp. 1075, 1079 (D.Mont.1981). Heaven Hill, however, argues that the language of the Endorsement affirmatively grants cover-

age. But the Endorsement has no effect apart from the Pollution Exclusion because the language employed in the Endorsement refers back to the Exclusion only: *"Subparagraph[ ] 1) a) ... of Exclusion f.... do[es] not apply to* 'bodily injury' or damage to personal property of others...." (Emphasis added).

■ Heaven Hill also suggests that the title of the Endorsement, "EXCEPTION TO POLLUTION EXCLUSION—LIMITED ON–PREMISES COVERAGE," demonstrates affirmative coverage. But Professor Couch dispels this notion: "The caption or title of an endorsement cannot override the provisions below it and, if those provisions unambiguously show the intent of the parties, then the ambiguity of the caption is resolved." *See* 2 Couch on Insurance 2d § 4:38. The language of the Endorsement unquestionably refers back to the Pollution Exclusion and nowhere grants affirmative coverage. Because an exclusion cannot grant coverage, the Pollution Endorsement, which simply modifies the Pollution Exclusion, likewise cannot grant coverage. The proper interpretation is that the Endorsement removes "damage to personal property of others" from the Exclusion, which thereby restores that property to the broad coverage of the Insuring Agreement. In other words, "the coverage supposedly 'granted' by the exception to [the] exclusion [ ] has already been granted in the insuring provision." *Stillwater,* 508 F.Supp. at 1079.

■ With "damage to the personal property of others" (in the context of a pollution event) restored to the Insuring Agreement, it appears as if the bourbon might be covered; thus, we examine whether any other exclusions apply. Kemper claims that the Care, Custody or Control Exclusion applies, and we agree. That exclusion reads as follows:

2. Exclusions

This insurance does not apply to:

. . . .

j. Damage to Property

"Property damage" to:

. . . .

4) Personal property in the care, custody or control of the insured;

There is no dispute that the Care, Custody or Control Exclusion, read in isolation, applies to the facts of this case. Heaven Hill sold the bourbon destroyed in the fire to its customers, making it the personal property of others. Heaven Hill also stored the bourbon in its warehouses, which were located on its premises and controlled by its employees, so the bourbon was in Heaven Hill's care, custody or control. Whatever the effect of other provisions, the exclusion covers the bourbon that was destroyed in the fire.

■ Further, the Care, Custody or Control Exclusion is unambiguous. Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written. *American National Bank and Trust Company v. Hartford Accident and Indemnity Company,* 442 F.2d 995, 999 (6th Cir.1971) ("... under Kentucky law unambiguous and clearly drafted exclusions which are 'not unreasonable' are enforceable."); *see also Masler v. State Farm Automobile Insurance Company,* Ky., 894 S.W.2d 633 (1995). We agree with the court in *Diamaco, Inc., v. Aetna Casualty & Surety Company,* 97 Wash.App. 335, 983 P.2d 707 (1999):

Because coverage exclusions are "contrary to the fundamental protective purpose of insurance," they are "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning." But that strict construction should not overcome "plain,

clear language resulting in a strained or forced construction."

(Internal citations omitted). The Care, Custody and Control Exclusion in this case clearly defines the coverage.

 Kemper further asserts that the Pollution Exclusion and Endorsement have no bearing on property in the care, custody, or control of the insured, regardless of who owns it. The law supports this claim because "each exclusion refers to the risks insured against in the coverages and not to the other exclusions." *Harrison*, 681 P.2d at 880. And each exclusion is to be read "independently of every other exclusion." *Id.* Because an exclusion is not an affirmative grant of coverage—and each exclusion is independent of all others—any applicable exclusion is sufficient to remove coverage. In other words, "[i]f any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." *Weedo*, 405 A.2d at 795, *quoting Tinker*, "Comprehensive General Liability Insurance—Perspective and Overview" 25 Feder. Ins. Coun. Q. 217, 223 (1975).

This result, that the Care, Custody, or Control Exclusion applies in this case, is further supported by the very purpose of such an exclusion, which the Seventh Circuit elaborated on in *Stewart Warner Corporation v. Burns International Security Services, Inc.*, 527 F.2d 1025, 1030 (7th Cir.1975):

> One purpose [served by "care, custody or control" exclusions] is to prevent the general liability insurer from becoming a guarantor of the insured's workmanship in his ordinary operations. Failures of workmanship are a normal business risk which the insured is in the best position to prevent. If such risk be transferred to the insurer via general liability provisions, the cost of general liability cover-

age will be greater. The "care, custody or control" exclusion is designed to avoid such result.

(Internal citations omitted).

## AMBIGUITY

Heaven Hill next argues that the insurance policy is ambiguous and any ambiguity should be resolved in its favor according to our decision in *St. Paul Fire & Marine Insurance Company v. Powell–Walton–Milward, Inc.*, Ky., 870 S.W.2d 223 (1994). Specifically, Heaven Hill claims that the Pollution Endorsement appears to grant coverage for the claim while the Care, Custody or Control Exclusion appears to deny coverage, resulting in coverage susceptible of two reasonable interpretations.

Heaven Hill's reliance on *St. Paul* is misguided. In that case, we addressed a conflict between two clauses of an insurance policy, and we found those clauses to be ambiguous. The coverage language included a claim that was denied by an exclusion. Heaven Hill, groping for legal terra firma, seizes upon our holding in that case to support its argument:

> A policy of insurance is to be construed liberally in favor of the insured, and if, from the language, there is doubt or uncertainty as to its meaning, and it is susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted.

*Id.* at 227. But *St. Paul* involved an ambiguity between the insuring agreement and a single exclusion. The present case, by contrast, involves an alleged ambiguity between two exclusions. The difference is significant. There can be no ambiguity between two exclusions because, again, exclusions do not grant coverage and they are considered independently of each other. The Supreme Court of New York, considering the same issue in *Hartford*

*Accident & Indemnity Company v. A.P. Reale & Sons, Inc.*, 228 A.D.2d 935, 936, 644 N.Y.S.2d 442 (1996), reached the same conclusion:

> While we recognize that exclusion (a) seems to be contradicted by exclusions (n) and (2)(d)(iii), this apparent contradiction is negated by the application of the principle that policy exclusions are to be read seriatim [i.e., separately] and, if any one exclusion applies, there is no coverage since no one exclusion can be regarded as inconsistent with another (see, *Jakobson Shipyard v. Aetna Cas. & Sur. Co.*, 775 F.Supp. 606, 612–613, aff'd 961 F.2d 387; *Rhinebeck Bicycle Shop v. Sterling Ins. Co.*, 151 A.D.2d 122, 126, 546 N.Y.S.2d 499; *Zandri Constr. Co. v. Firemen's Ins. Co.*, 81 A.D.2d 106, 109, 440 N.Y.S.2d 353, aff'd sub nom. *Zandri Constr. Co. v. Stanley H. Calkins, Inc.*, 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.E.2d 922; *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 248, 405 A.2d 788).

*See also Biebel Brothers, Inc. v. United States Fidelity & Guaranty Company.*, 522 F.2d 1207, 1212 (8th Cir.1975).

▇▇▇ Heaven Hill also contends that "[a]n endorsement is later in time than the original policy; and it should prevail over any conflicting provisions of the policy." *Goodin v. General Accident Fire and Life Assurance Corporation*, Ky.App., 450 S.W.2d 252, 256 (1970), quoting 1 Couch on Insurance 2d, § 4:36. This statement is correct, as far as it goes. The statement from Couch which precedes it sheds more light on this case: "The policy and its endorsements validly made a part thereof together form the contract of insurance, and are to be read together to determine the contract actually intended by the parties." *Id.* at § 4:36. The Pollution Endorsement clearly modifies the Pollution Exclusion alone as is clear from the language employed in the contract:

> This endorsement modifies insurance provided under the following:
> . . . .
> Subparagraph[ ] 1) a) . . . of *Exclusion f.* [Pollution Exclusion] (emphasis added).

This language unmistakably demonstrates that the parties did not intend this endorsement to alter or supersede the Care, Custody or Control Exclusion.

Heaven Hill's arguments are neither persuasive nor new. The *Harrison* court disposed of the same arguments:

> Harrison contends that an exception to exclusion (a) of the basic policy amended the coverage paragraph to extend coverage for the . . . claims alleged. . . . We disagree.
>
> . . . .
>
> Exclusion clauses do not grant coverage; rather, they subtract from it. . . . Harrison nevertheless argues that, because exclusion (a) appeared to grant coverage and the exclusion discussed above . . . appeared to deny it, an ambiguity was created which we must construe in Harrison's favor. We disagree.
>
> This argument is based on two false assumptions. First, it assumes that exclusions grant coverage. They do not. Second, it assumes that the exclusions must be harmonized with each other. This is not true. Each exclusion refers to the risks insured against in the coverages and not to the other exclusions. Each exclusion is to be read with the insuring agreement, independently of each other exclusion. Read in this way, there is no ambiguity in the policy. . . .

*Harrison*, 681 P.2d at 879–80 (internal citations omitted); *see also Stillwater*, 508 F.Supp. at 1075 (reaching the same conclusions on the same issues).

▇▇▇ We are cognizant of the general principles of insurance contract construction; specifically, an insurance contract must be construed without disregarding or inserting words or clauses

and "seeming contradictions should be harmonized if reasonably possible." 43 Am.Jur.2d, *Insurance,* § 275. Our construction of the Kemper—Heaven Hill contract complies with these requirements. The Pollution Endorsement returns to the Insuring Agreement coverage for "damage to personal property of others" if it occurs within the context of a pollution event. The Care, Custody or Control Exclusion denies coverage for personal property, irrespective of ownership, if it is in the insured's care, custody or control. So, effectively, the Endorsement simply restores to the Insuring Agreement coverage of personal property of others *not in the care, custody or control of the insured.* This construction gives effect to both provisions and avoids any judicial editing.

The Insuring Agreement states that Kemper will pay damages "to which this insurance applies." The Supreme Court of New Jersey aptly described the limiting effect of this language: "The qualifying phrase, 'to which this insurance applies' underscores the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy." *Weedo,* 405 A.2d at 790. The policy affords broad coverage but contains numerous exclusions. The Care, Custody or Control Exclusion applies to the facts of this case; consequently, the fire damage suffered by Heaven Hill was not property to which this insurance applies.

Accordingly, we reverse the Court of Appeals and reinstate the summary judgment of the circuit court.

All concur.