RENDERED: DECEMBER 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0813-MR

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY                                    APPELLANT


                    APPEAL FROM ROWAN CIRCUIT COURT
v.             HONORABLE WILLIAM EVANS LANE, JUDGE
                    ACTION NO. 19-CI-90053


JOSHUA TRENT; JOSHUA TRENT
CUSTOM DESIGNS, LLC; MELISSA
LEUENBERGER; AND TIM
LEUENBERGER                                                APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND JONES, JUDGES.

CALDWELL, JUDGE: Kentucky Farm Bureau Mutual Insurance Company

("KFB") appeals from the denial of summary judgment in an insurance coverage

dispute. We reverse and remand with directions to enter judgment in KFB's favor

for the reasons stated in this Opinion.

## FACTUAL AND PROCEDURAL HISTORY

Tim and Melissa Leuenberger sued Joshua Trent and Joshua Trent Custom Designs, LLC (collectively "Trent") for negligent design and fraud in the inducement. According to the complaint, the Leuenbergers hired Joshua Trent to design a residential building and he prepared cost estimates for building the new residence. They alleged they entered into the construction management agreement[1] with Joshua Trent Customs Designs, LLC based on Joshua Trent's representations about the design and cost estimates. (Trent was not hired to perform construction work.)

The Leuenbergers alleged that, prior to construction, Trent became aware of a design defect which greatly increased the cost of framing the home but failed to inform them of the defect or the increased cost. They alleged a carpenter told Trent the house could not be framed within Trent's estimate, but Trent failed to inform them and told the carpenter to proceed with framing the house. The Leuenbergers also alleged that other design defects greatly added to construction costs. They asserted Trent failed to comply with its duties to exercise reasonable care in designing the home and to inform them of design defects and cost overruns.

---

[1] The construction management agreement is in the record on appeal. It states that Trent was not a general contractor, that all contracts for completion of construction work would be between the homeowners (the Leuenbergers) and those performing construction services, and that Trent made no guarantees of costs, workmanship, or warranties.

The Leuenbergers alleged damages consisting of pecuniary loss, increased construction costs, additional interest payments, financial strain, mental anguish, and anxiety. No physical injury to the home was alleged.

After the Leuenbergers filed their complaint against Trent, KFB filed a separate action against Trent and the Leuenbergers requesting declaratory relief. In its petition for declaration of rights, KFB stated it issued a Commercial Lines Policy ("the policy") to Joshua Trent and his wife.[2] But it argued that the policy did not provide coverage for the allegations in the Leuenbergers' complaint and, alternatively, that any coverage was excluded under the policy. It requested the trial court to enter a judgment declaring that the policy did not provide coverage for the Leuenbergers' allegations and that KFB did not owe Trent a duty to defend in the Leuenbergers' action.

KFB later filed a motion for summary judgment in the declaratory judgment action. It pointed out that the policy only provided liability coverage for "bodily injury" or "property damage" caused by an "occurrence" as defined by the policy. And it noted the policy defined an "occurrence" as "an accident, including

---

[2] KFB has not specifically argued in its briefs that the policy applied only to Joshua Trent and his wife individually and not to Joshua Trent Custom Designs, LLC.

continuous or repeated exposure to substantially the same general harmful

conditions."[3]

KFB asserted no property damage[4] or bodily injury had been alleged.

And it argued the allegations about Trent's engaging in fraudulent conduct or

performing contractual obligations could not be considered an accident –

especially under precedent about the doctrine of fortuity.

In the alternative, even assuming there was an initial grant of

coverage, it argued that an exclusion set forth in the policy applied. It argued the

terms of the policy were clear and unambiguous and there was no possibility of

coverage for the Leuenbergers' claims so it had no duty to defend.

---

[3] We have cited to both KFB's motion for summary judgment and to the copy of the policy attached to the motion.

[4] KFB asserted Tim Leuenberger testified there was no property damage to the house and attached a purported portion of his deposition transcript to this effect in the appendix to its appellant brief. The Appellees do not appear to dispute that Tim Leuenberger testified to a lack of property damage to the house and admit there was no physical damage to the house in their brief. But we have been unable to locate the portion of Mr. Leuenberger's deposition testimony about this lack of physical damage to the home in the written record on appeal – despite KFB's designating Tim Leuenberger's deposition transcript to be included in the record on appeal.

The certification of record prepared by the circuit clerk indicates that zero depositions were included in the record on appeal. We encourage counsel to carefully review the clerk's certification of the record to make sure that all designated items are included in the record on appeal. We further remind counsel that it is the appellant's responsibility to make sure that the record on appeal is complete and that we may presume items omitted from the record support a trial court's decision. *Smith v. Smith*, 450 S.W.3d 729, 731-32 (Ky. App. 2014).

Trent and the Leuenbergers filed separate responses to the motion for summary judgment.[5] They asserted bodily injury was alleged in the form of mental anguish and anxiety. They argued, *inter alia*,[6] that KFB had a duty to defend under case law recognizing such a duty whenever any single allegation might possibly come within coverage terms. They also argued policy terms should not be construed in an overly technical fashion and ambiguities should be construed in their favor.

The Leuenbergers pointed out the policy defined property damage as including not only physical injury to tangible property but also loss of use of tangible property that was not physically injured. They admitted they made no claims for physical property damage to the home. Instead, they asserted they suffered damages resulting from "loss of use of the construction documents due to Trent's negligence in the form of major unanticipated cost overages."

The Leuenbergers argued there was an occurrence triggering coverage arising from "Trent's accidental errors in the construction design plans and cost

---

[5] Perhaps one could question whether the Leuenbergers had a direct stake in the insurance coverage dispute between KFB and Trent. And KFB suggests in its reply brief that the Leuenbergers lack standing to make arguments about any duty to defend Trent. But KFB named the Leuenbergers as party defendants in the declaratory judgment action. And resolution of the declaratory judgment action might affect the Leuenbergers' ability to collect on any judgment in their action against Trent. So, we decline to address standing issues further.

[6] Trent also responded to KFB's arguments about the principle of fortuity. Arguments about fortuity will be noted and addressed in the analysis portion of this Opinion.

estimate documents" which greatly increased the costs of labor and materials in fixing the roof design. They argued they alleged an *accident* as generally construed as something causing unintended consequences in *Fryman v. Pilot Life Insurance Company*, 704 S.W.2d 205, 206 (Ky. 1986).

The trial court denied KFB's motion for summary judgment. It noted the issue was whether there was coverage under the policy and summarized the parties' arguments on this issue.[7] Its terse written order alluded to issues about whether property damage or an accident had been alleged. It stated: "The Court finds that there is an allegation of loss of use of tangible property that is not physical injury as set forth by the policy and whereby the Leuenbergers lost the use of value in the plans and estimates from Trent due to inattention, carelessness or other reason." And it cited *Fryman*, 704 S.W.2d at 206, without further discussion.

KFB filed a motion to reconsider and/or to alter, amend, or vacate. Noting the trial court held there was an initial grant of coverage, it requested that the trial court consider whether exclusions applied.[8] It also requested the trial court make its finding as to any coverage final and appealable.

---

[7] "Plaintiff [KFB] states these allegations are not included or are subject to a number of exclusions from coverage, while the Defendants [Trent and the Leuenbergers] argue that this is a negligence action and not contract and this occurrence is covered." (Record ("R."), p. 212).

[8] KFB had only argued one particular exclusion under the policy (exclusion m) in its written summary judgment motion. Based on the trial court's finding in its initial order denying summary judgment that there was an allegation of property damage in the form of loss of use or value of plans and estimates, KFB argued that two additional exclusions (k and n) applied to

After additional briefing, the trial court entered an order noting KFB's assertion that the previous order failed to address exclusions. But it stated it had addressed the issue. It reiterated that it declined to allow KFB to avoid coverage through a motion for summary judgment. And it denied the motion to alter, amend, or vacate. Lastly, it stated: "[t]his is a final and appealable order which also applies" to its previous order denying summary judgment.

## ANALYSIS

### I.     Grant of Summary Judgment Reviewable Under Circumstances

We first address whether this appeal is even properly before this Court. Generally, orders denying summary judgment are interlocutory and not reviewable. *Erie Insurance Exchange v. Johnson*, 647 S.W.3d 198, 202 (Ky. 2022). But there is an exception to this rule if four requirements are met: "(1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom." *Id.* (internal quotation marks and citations omitted). All four requirements are met here.

---

exclude coverage for such alleged losses in its motion to reconsider, alter, amend, or vacate. KFB argued that the plans and estimates were Trent's products and that coverage for damage to the insured's product or other damages incurred due to the withdrawal of its products due to defects or deficiencies were specifically excluded under exclusions k and n, respectively.

In a nutshell, the only issue before us is whether there was coverage for and a duty to defend against the allegations in the Leuenbergers' complaint under the terms of the policy. "Interpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat'l Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002).

The only issue before us is a matter of law, the relevant facts (the contents of the complaint and the policy) are undisputed and the summary judgment motion was denied in a final judgment[9] which has been appealed. Therefore, we may properly review the denial of summary judgment here. Having concluded the denial of summary judgment is reviewable, we must next consider whether the issues raised on appeal were preserved for review.

## II.  Issues of Coverage, Exclusion, and Duty to Defend are Preserved

Appellees argue that some issues are not preserved for appeal. And KFB's Appellant brief does not explicitly comply with the requirement that it "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v).

---

[9] "A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding . . ." Kentucky Rules of Civil Procedure (CR) 54.01. The trial court's denial of summary judgment in this instance adjudicated all the parties' rights at issue in the declaratory judgment action concerning coverage, exclusions, and duty to defend.

Nonetheless, the issues in this appeal – concerning coverage, exclusions, and duty to defend – were raised to the trial court. The statement of facts in KFB's Appellant brief cites to the record and shows issues were raised to the trial court in KFB's petition for declaratory relief and its summary judgment motion – despite the lack of explicit preservation statement in the argument portion of KFB's appellant brief.

Further, as KFB points out in its reply brief with some citations to the record, KFB presented to the trial court all arguments asserted on appeal. It argued some issues in the petition for declaratory relief and its summary judgment briefs. It argued other issues in the motion to reconsider or to alter, amend, or vacate – particularly application of exclusions n and k. In sum, KFB raised the issues now asserted on appeal to the trial court and the trial court rejected KFB's arguments in its written orders.

"[T]he critical point in preservation of an issue remains: was the question fairly brought to the attention of the trial court." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014). And preservation requires that the trial court have an opportunity to rule on issues. The trial court must be given an opportunity to rule on the merits of issues to properly preserve issues for appeal. *Charash v. Johnson*, 43 S.W.3d 274, 278 (Ky. App. 2000). Appellate courts lack

"authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009).

Though KFB's arguments on appeal were all presented to and rejected by the trial court based on our review of the record, we recognize that preservation is questionable when issues are raised first in CR 59.05 motions. And we generally elect not to consider issues raised only by such CR 59.05 motions. *D.W. Wilburn, Inc. v. H&H Printing, LLC*, 648 S.W.3d 687, 693 (Ky. App. 2022).

KFB's motion for reconsideration and/or to alter, amend or vacate might be understood as a CR 59.05 motion.[10] And KFB argued exclusions k and n for the first time in its motion for reconsideration or to alter, amend, or vacate based on our review of the written record.[11] We decline to reach the applicability of these two exclusions since preservation is questionable to the extent that these exclusions were argued only in a CR 59.05 motion.[12] However, KFB argued

---

[10] CR 59.05 explicitly refers to motions to alter, amend, or vacate judgments and establishes time limitations for filing such motions following entry of a final judgment. Motions for reconsideration are not explicitly mentioned in CR 59.05. KFB's reply brief argues the initial order denying summary judgment was not a final judgment and cites precedent indicating a trial court has authority to reconsider interlocutory orders and to revise such orders at any time before entering final judgment on all claims, rights, and liabilities of all parties to the action. *See Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 103 (Ky. App. 2011) (citing CR 54.02).

[11] Video recordings were not included in the record on appeal. So, we are not aware of any oral arguments about exclusions k and n before the trial court entered its first written order denying summary judgment.

[12] Regardless of whether issues about exclusions k and n were properly preserved or should have been raised prior to the initial denial of summary judgment, we ultimately decide this appeal in KFB's favor based on other grounds. As it is not necessary for us to reach the issues of whether

-10-

exclusion m in its summary judgment motion, so it preserved the issue of applying exclusion m.

Furthermore, KFB preserved its argument that there was no initial grant of coverage despite Appellees' arguments to the contrary. Appellees argue KFB failed to state its disagreement with the trial court's conclusion about the initial grant of coverage – especially about loss of use of tangible property in the form of loss of use of construction documents. But KFB challenged their arguments about coverage for loss of use of plan documents in its reply to summary judgment motion responses. KFB also expressed its disagreement with arguments that the Leuenbergers' lawsuit was not for faulty workmanship or that holdings in faulty workmanship cases did not apply here as we later discuss.

Though KFB argued exclusions and not issues about the initial grant of coverage in its motion to reconsider or alter or amend or vacate, KFB had already argued no initial grant of coverage in its summary judgment brief. Its argument against an initial grant of coverage emphasized there being no accident under the principle of fortuity.

Having argued against an initial grant of coverage to the trial court in its summary judgment motion and having obtained the trial court's ruling on this

exclusions n and k applied and because some authority suggests preservation of these issues may be questionable, we decline to discuss the merits of issues about exclusions n and k.

-11-

issue, KFB did not have to re-argue this issue in its motion for reconsideration or to alter, amend or vacate to preserve this issue. KFB's argument against an initial grant of coverage was raised to, and rejected by, the trial court so this was sufficient to preserve this issue under precedent including *Allgeier*, *Charash*, and *Brooks*. *See also* CR 59.06 ("Allegations of error, otherwise properly preserved, in respect to rulings, orders or instructions of the court need not be presented in a motion for a new trial in order to be preserved for appellate review.").

Similarly, KFB argued it had no duty to defend Trent against the Leuenbergers' allegations in its petition for declaratory relief and its summary judgment motion. The trial court implicitly rejected these arguments in denying KFB's summary judgment motion and in denying the motion to alter, amend, or vacate its initial order denying summary judgment.

In sum, though we decline to reach the applicability of exclusions k and n as perhaps questionably preserved, other issues on appeal are properly preserved for our review. Next, we identify the proper standard of review.

### III. We Review the Issues Presented Here *De Novo*

As interpreting insurance contracts is a matter of law and as rulings on summary judgment motions do not involve fact-finding, we review the trial court's denial of summary judgment *de novo*. *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky. 2010). Next, we consider the merits of the issues

-12-

raised on appeal – whether there was coverage, whether any exclusion applied, and whether there was a duty to defend.

## IV. Policy did Not Provide Coverage for Leuenbergers' Claims

As KFB points out in its brief, the policy provides for coverage of property damage or bodily injury caused by an "occurrence." And the policy defines an *occurrence* as "an accident, including continuance or repeated exposure to substantially the same general harmful conditions." However, the policy does not define the term *accident*.

KFB argues no accident was alleged here. Noting the trial court's general citation to *Fryman*, 704 S.W.2d at 206, it contends *Fryman*'s definition of an accident for purposes of life insurance coverage does not apply here.

Our Supreme Court held in *Fryman*: "unless otherwise excluded by the terms of the life insurance policy, a death is accidental absent a showing that the death was a result of plan, design or intent on the part of the decedent." *Id*. In so doing, the Kentucky Supreme Court noted that the terms *accident* or *accidental* "have never acquired a technical meaning in law, and must be interpreted according to the usage of the average man" and construed in the insured's favor. *Id*. So, it noted the general understanding of an *accident* as something causing unintended results – "an unfortunate consequence which befalls an actor through

-13-

his inattention, carelessness or perhaps for no explicable reason at all" with the "result" not being a "product of desire." *Id.*

KFB argues this general definition of *accident* from *Fryman* – a life insurance case – is inapplicable here. Instead, KFB asserts that for purposes of determining whether commercial general liability (CGL) insurance[13] affords coverage, courts must determine whether an event is an accident under the doctrine of fortuity. In support, it cites *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d

---

[13] The policy incorporates a Commercial General Liability Coverage Form and there appears to be no dispute that the policy is a commercial general liability policy.

Commercial general liability policies have evolved from "comprehensive general liability" policies of the past. But despite the common CGL initials, commercial general liability policies use a different name and a different standard form:

> The standard commercial general liability insurance policy was originally promulgated in 1940 under the title of "comprehensive general liability." Since that time, the standard form has undergone five principal revisions, the most recent of which came into use in 1986 at which time the name of the policy was changed from "comprehensive" to "commercial."

*Overview of commercial general liability policies*, 9A STEVEN PLITT, ET AL., COUCH ON INS. § 129:1 (3d ed. 2022) (citations omitted).

As our Supreme Court noted in construing comprehensive general liability policies, "the very name of the policy suggests the expectation of maximum coverage." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 278 (Ky. 1991). But perhaps commercial general liability policies do not convey quite as broad an expectation of coverage as comprehensive general liability policies – given the change in name and changes in standard forms. However, commercial general liability policies also generally provide broad coverage subject to certain limitations. "[A] commercial general liability insurance policy is generally designed to provide coverage for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or work is not that for which the damaged person bargained. . . ." COUCH, *supra.*

-14-

639, 643 (Ky. 2018), and *Cincinnati*, 306 S.W.3d at 69. We agree that this binding precedent requires application of the doctrine of fortuity here.

According to our Supreme Court, "the legal analysis used to determine whether something constitutes an *accident* for issues of CGL coverage is the doctrine of fortuity, which encompasses both intent and control." *Acuity*, 544 S.W.3d at 642-43. To determine if an event was an accident for purposes of CGL coverage, courts must consider: "1) whether the insured intended the event to occur; and 2) whether the event was a chance event beyond the control of the insured." *Id.* at 643 (internal quotation marks omitted). Thus, "faulty workmanship" by a CGL insured resulting in property damage is not an accident when the actions leading to property damage were under the insured's control and the insured intended to take those actions. *Id*. at 644.[14]

Not squarely addressing whether there was any accident in terms of fortuity, the Appellees argue that KFB failed to state its disagreement with the trial court's conclusion about the initial grant of coverage for loss of use of plan

---

[14] The Leuenbergers assert: "an 'occurrence' is to be liberally construed as an event the insured did not actually or subjectively intend or expect even though the action given [sic] rise to the injury was intentional and the injury foreseeable." Leuenbergers' Appellee brief, p. 7 (citing *Bituminous Cas. Corp. v. Kenway Contracting Inc*., 240 S.W.3d 633, 639 (Ky. 2007), *as modified on denial of reh'g* (Jan. 24, 2008)). But our Supreme Court has made clear that CGL coverage depends not only on the insured's lack of intent to cause an event or results, but also on the event or result being a "chance event beyond the control of the insured[.]" *Acuity*, 544 S.W.3d at 643.

documents. As previously discussed, we reject Appellees' contention that issues about the initial grant of coverage were not properly preserved for our review.

Appellees further argue case law about faulty workmanship is not applicable because this case does not involve allegations of damage to Trent's work or replacement of Trent's work. They point out that the case law cited by KFB to the trial court and to this court does not concern cases about alleged loss of use of tangible property that is not physically injured.[15]

They contend the broader definition of accident in *Fryman* should be applied here. They also suggest the Leuenbergers' seeking damages arising from loss of use of construction documents rather than physical damage to buildings distinguishes this case from faulty workmanship cases.

Despite Appellees' arguments to the contrary, we conclude that the reasoning of the faulty workmanship cases applies here. Our Supreme Court

---

[15] As an example of a case involving a CGL insurance coverage dispute involving loss of use of tangible property not physically injured, the Leuenbergers cite *Hartzell Industries, Inc. v. Federal Insurance Company*, 168 F. Supp. 2d 789 (S.D. Ohio 2001). Problems with the fans manufactured by the insured caused reduced use of a boiler house which was not physically injured due to excess heat since the fans had to be shut off. *Id.* at 794-95. The Court concluded the partial loss of use of the boiler house qualified as property damage in the sense of loss of use of tangible property. *Id.* at 796. The fans were not covered by the policy, *id.* at 794, and an exclusion for damage to the insured's product applied to preclude coverage for loss of use of the fans. *Id.* at 798.

*Hartzell* was decided under Ohio law about insurance coverage issues. *See id.* at 800-01. And *Hartzell* does not discuss the principle of fortuity which the Kentucky Supreme Court mandated consideration of to determine whether an accident has occurred triggering CGL coverage. *See Acuity*, 544 S.W.3d at 642-43. In short, *Hartzell* is not binding on us in determining whether there is an accident triggering coverage here.

-16-

clearly held that in determining whether an accident triggering CGL coverage occurred, the doctrine of fortuity applies requiring consideration of both intent and control. *Acuity*, 544 S.W.3d at 643. This case clearly involves a coverage dispute about a CGL policy.

Furthermore, despite the Leuenbergers' not claiming Trent did faulty work **on their house**, as noted in their summary judgment motion response, Trent's preparation of designs and cost estimates "was work performed by Trent that the Leuenbergers claim was faulty" as pointed out in KFB's reply. In other words, faulty workmanship was alleged – albeit not in the typical context of physical faults in constructed buildings such as *Acuity* or *Cincinnati*.

Trent may have lacked control over the actual building of the house and had no intent to cause harm, as represented in its response opposing summary judgment. But as KFB pointed out in its reply, Trent had control over preparing designs and cost estimates. And Trent's alleged actions in communicating or failing to communicate with other parties and in preparing designs and cost estimates was indisputably intentional conduct fully within Trent's control. Despite the Leuenbergers' assertions of Trent's "accidental errors" in designs resulting in higher costs, no one has directed our attention to any allegations in the record about higher costs resulting from any chance event outside Trent's control, instead of alleged poor performance of tasks fully within Trent's control. Thus,

there is no allegation of an accident or occurrence triggering CGL coverage under the principle of fortuity.

Even assuming that the Leuenbergers suffered some sort of property damage or bodily injury,[16] no accident triggering an initial grant of coverage under the CGL policy was alleged in the Leuenbergers' complaint under binding precedent such as *Acuity*.

**V.    At Least One Exclusion to Coverage Under Policy Also Applied**

As there was no initial grant of coverage triggered by the allegations in the complaint, it is not necessary to look further to see if an exclusion applied. *American Mining Insurance Company v. Peters Farms, LLC*, 557 S.W.3d 293, 298-99 (Ky. 2018).

Nonetheless, we conclude that the trial court also erred in rejecting arguments that any exclusion in the policy applied.

---

[16] Regardless of the type of injury alleged, the policy provided coverage only for such injuries resulting from an accident. As we conclude there was no allegation of an accident triggering CGL coverage under binding precedent, we need not resolve whether allegations of mental anguish or anxiety qualified as allegations of bodily injury. (*Bodily injury* is defined in the policy as meaning: "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (R., p. 85)).

As previously noted, the Leuenbergers assert that KFB failed to challenge the trial court's finding of an initial grant of coverage related to an alleged loss of use of tangible property rather than physical injury to property damage. But regardless of the type of property damage alleged, the policy only provided coverage for property damage resulting from an accident.

Assuming *arguendo* there was an initial grant of coverage, one exclusion set forth in the policy clearly and explicitly provided there would be no coverage for the allegations set forth in the Leuenbergers' complaint. And KFB argued that this exclusion barred coverage of the allegations in the complaint in its motion for summary judgment.

Exclusions should be "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning." *See Kemper*, 82 S.W.3d at 873. But such strict construction of exclusions should not "overcome plain, clear language" or result in a "strained or forced construction." *Id.* at 873-74 (internal quotation marks omitted).[17] Here, the policy provided for the exclusion in clear, plain language.

As previously mentioned, the policy defined *property damage* as either physical injury to tangible property or as loss of use of tangible property

---

[17] Our Supreme Court specifically stated its agreement with quoted language from *Diamaco, Inc. v. Aetna Casualty & Surety Company*, 97 Wash.App. 335, 342, 983 P.2d 707, 711 (Wash. Ct. App. 1999):

> Because coverage exclusions are "contrary to the fundamental protective purpose of insurance," they are "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning." But that strict construction should not overcome "plain, clear language resulting in a strained or forced construction."

*Kemper*, 82 S.W.3d at 873-74.

which has not been physically injured.   And it defined *impaired property* as "tangible property other than 'your product' or 'your work'" which "cannot be used or is less useful" because of known or suspected defects in the insured's work where such property could not be restored to use by repair, replacement, or adjustment of the work or product.

Keeping these definitions in mind, the policy clearly and explicitly provided an exclusion to coverage for damage to impaired property arising from defects or inadequacies in the insured's product or work:

> m. Damage to Impaired Property or Property Not Physically Injured
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > 1)      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; . . .[18]

The Leuenbergers contend this "your work" exclusion is ambiguous. They argue a similar "your work" exclusion was found ambiguous and unenforceable in *Bituminous Casualty Corporation*, 240 S.W.3d at 642.  But the issue there concerned whether demolition performed in an improper place, rather than in a faulty manner, due to miscommunication between the insured contractor

---

[18]  The policy also provides definitions – albeit somewhat circular ones – of "your work" and "your product" as we shortly discuss.

and a subcontractor was covered.  *Id*. at 635-36.  (Demolition of a carport only was sought but the subcontractor demolished a large portion of a house in addition to the carport due to the miscommunication.)  Our Supreme Court held the "your work" exclusion was ambiguous about whether coverage for work performed properly but in an improper place, resulting in a need for repair or replacement, was excluded.  *Id*. at 642.  Due to this ambiguity about coverage for work performed in the wrong place, our Supreme Court held the "your work" exclusion could not be enforced to preclude coverage for the insured.  *Id*. at 642-43.  Unlike *Bituminous*, there was no allegation here that the work was otherwise performed properly but in the wrong place.

The Leuenbergers also assert that "your work" is not specifically defined in the policy, and that it is not clear what Trent's "work" in this context would be.  And the Leuenbergers also assert KFB could have, but failed, to include an exclusion "specifically precluding coverage for the drafting and engineering activities of Joshua Trent Custom Designs, LLC . . . ."  But even without an explicit and specific exclusion precluding coverage for drafting and engineering activities, such activities are clearly work under the somewhat general definition in the policy.

Despite any lack of a better or more specific definition, "your work" is defined in the policy to broadly include:  "Work or operations performed by you

-21-

or on your behalf." Similarly, "your product" is defined in the policy to include: "[a]ny goods or products," other than real estate "sold, handled, [or] distributed" by the insured.

The Leuenbergers alleged that they hired Trent to prepare design plans and construction cost estimates and that Trent's design plans and cost estimates were defective or inadequate in the complaint. Surely the design plans and cost estimates came within the general definitions of your work or your product in the policy. Thus, any property damage in the sense of impaired property (such as loss of use or loss of value of use of construction documents) which stemmed from defects or inadequacies in Trent's work or products (*i.e.*, design plans or cost estimates) is specifically excluded under exclusion m. Exclusion m plainly and clearly precludes coverage for property damage to impaired property not physically injured arising from defects or inadequacies in the insured's work or products.

## VI. KFB Owes No Duty to Defend Trent in Leuenbergers' Action

Precedent provides "an insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Cincinnati*, 306 S.W.3d at 79.

Nonetheless, the allegations stated in the Leuenbergers' complaint clearly do not potentially or possibly come within the coverage terms of the policy

here – especially applying the principle of fortuity in binding precedent and the plain language in exclusion m. Thus, the trial court erred in denying KFB's request for a declaration that it had no duty to defend Trent against the allegations in the Leuenbergers' complaint.

Any other issues or arguments raised by the parties in their briefs but not discussed in this Opinion lack merit or relevancy or are not issues which we must necessarily discuss in resolving this appeal.

## CONCLUSION

For the reasons stated herein, we conclude the trial court erred in denying KFB summary judgment in the declaratory judgment action. Thus, we reverse and remand with directions to enter judgment in KFB's favor stating there is no coverage under the policy and no duty for KFB to defend Trent in the action filed by the Leuenbergers.


GOODWINE, JUDGE, CONCURS IN RESULT ONLY.

JONES, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEFS FOR APPELLANT:

Farrah W. Ingram
Mt. Sterling, Kentucky

BRIEF FOR APPELLEES JOSHUA
TRENT AND JOSHUA TRENT
CUSTOM DESIGNS, LLC:

Kenneth L. Finley
Lexington, Kentucky

BRIEF FOR APPELLEES TIM AND
MELISSA LEUENBERGER:

Laura Jane Phelps
Grayson, Kentucky